

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
05/16/2017

| | | |
|---|---|---|
| IN RE: | § | |
| **SYED RIZWAN MOHIUDDIN** | § | **CASE NO: 15-34752** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| **SOUTHERN TITLE INSURANCE** | § | |
| **CORPORATION** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-3151** |
| | § | |
| **SYED RIZWAN MOHIUDDIN** | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Southern Title Insurance Corporation filed this adversary proceeding against Syed Rizwan Mohiuddin in order to obtain a determination that Mohiuddin is liable to Southern Title, and that a portion of that liability is non-dischargeable. Mohiuddin filed an answer to Southern Title's complaint after Southern Title moved for an entry of default against Mohiuddin. Mohiuddin asserted his rights under the Fifth Amendment to all of Southern Title's bases for Mohiuddin's liability and the nondischargeability of that liability. Southern Title subsequently filed motions for sanctions and alternatively for summary judgment. Those motions allege that Mohiuddin defrauded Southern Title, that Mohiuddin is liable to Southern Title for damages and post-judgment interest resulting from that fraud, and that all or a portion of Mohiuddin's outstanding debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(4). Southern Title's motion for summary judgment is granted as to its fraud, 11 U.S.C. § 523(a)(2)(A) nondischargeability, and post-judgment interest claims.

**Background**

Mohiuddin is an individual residing in Houston, Texas.  (ECF No. 2-2 at 3).  Mohiuddin previously served as treasurer for American National Title Company and was involved in its management and affairs.  (ECF No. 25 at 11).  American National Title issued title insurance policies on behalf of Southern Title, a title insurance underwriter.  (ECF No. 25 at 11). American National Title independently provided related escrow and closing services for closings at which multiple Southern Title insurance policies were issued.  (ECF No. 25 at 11). Mohiuddin personally and exclusively managed funds received by American National Title while serving as its treasurer.  (ECF No. 25 at 11).

American National Title knowingly failed to except valid and existing prior liens[1] from coverage under Southern Title insurance policies when it issued new Southern Title insurance policies.  (ECF No. 1-1 at 4; ECF No. 25 at 12–36).  American National Title failed to disclose to Southern Title that it did not except these prior liens.  (ECF No. 25 at 38–43).  Additionally, American National Title knowingly failed to disburse funds to existing lienholders while providing closing services in connection with the issuance of Southern Title insurance policies; instead, American National Title retained the funds or disbursed them to improper entities. (ECF No. 101 at 4; ECF No. 25 at 12–36).  Consequently, Southern Title asserts that American National Title is liable to Southern Title for damages under the Southern Title insurance policies issued through American National Title, related fees, and costs.  (ECF No. 1-1 at 4).

Southern Title contends that Mohiuddin, as American National Title's treasurer, often used the funds received by American National Title from its escrow and closing services completed on behalf of Southern Title for his personal benefit or for an otherwise improper

---

[1] If a prior lien is "excepted" on a policy of title insurance, neither the purchaser nor the new mortgagee are protected by the title insurance from the prior lien.

purpose.  (ECF No. 25 at 11).  Mohiuddin allegedly concealed his affiliation with American National Title from lenders in order to insure his continued receipt of such funds.  (ECF No. 25 at 12).  Southern Title also claims that Mohiuddin was aware of American National Title's failures to disclose that it did not except prior liens from coverage to Southern Title in his role as American National Title's treasurer.  (ECF No. 25 at 38–43).

On September 8, 2015, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against Mohiuddin.  (Case No. 15-34752).  The Court entered an order for chapter 7 relief against Mohiuddin on October 6, 2015.  (ECF No. 1-1 at 1).

On July 1, 2016, Southern Title filed this adversary proceeding against Mohiuddin in order to obtain a determination that Mohiuddin is liable to Southern Title for the damages, fees, and costs it sustained from certain of the insurance policies American National Title issued on behalf of Southern Title.  (ECF No. 1 at 1).  Southern Title also sought a determination that all or a portion of Mohiuddin's liability is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(4).  (ECF No. 1 at 1).  After Mohiuddin failed to plead or otherwise defend himself against Southern Title's complaint, Southern Title moved for an entry of default under FED. R. CIV. P. 55(a) and FED. R. BANKR. P. 7055.  (ECF No. 12 at 1–2).

After Southern Title's motion for entry of default, Mohiuddin filed an answer to Southern Title's complaint.  (ECF No. 15).  In his answer, Mohiuddin asserted his rights under the Fifth Amendment in response to each of Southern Title's bases for Mohiuddin's liability and nondischargeability of that liability. (ECF No. 15 at 2–15).

On March 1, 2017, Southern Title filed motions for sanctions and summary judgment against Mohiuddin.  (ECF No. 25).  With respect to sanctions, Southern Title asserted that Mohiuddin:

- failed to participate in the lawsuit;

- failed to timely answer Southern Title's complaint;

- invoked the Fifth Amendment in response to nearly all of the allegations in Southern Title's complaint;

- failed to attend the meeting of the parties required by FED. R. BANKR. P. 7026;

- failed to confer with Southern Title to formulate a joint report pursuant to FED. R. BANKR. P. 7026 as required by an order of the Court;

- failed to attend the July 17, 2016, scheduling conference set by the Court;

- failed to respond to Southern Title's requests for Production; and

- failed to make mandatory initial and subsequent disclosures pursuant to FED. R. BANKR. P. 7026.  (ECF No. 25 at 9).

Accordingly, Southern Title requested that the Court enter a default judgment against Mohiuddin under FED. R. CIV. P. 37 and FED. R. BANKR. P. 7037.  (ECF No. 25 at 9–10).  Based on the same assertions, Southern Title alternatively requested that the Court prohibit Mohiuddin from defending the merits of this adversary proceeding or the merits of Southern Title's motion for summary judgment pursuant to FED. R. CIV. P. 37 and FED. R. BANKR. P. 7037.  (ECF No. 25 at 10).

Because the Court grants judgment to Southern Title, the request for sanctions is moot.

Southern Title additionally claimed that it is entitled to summary judgment because no genuine dispute as to any material fact exists to undermine Southern Title's claims that, amongst other things:

- Mohiuddin defrauded Southern Title by failing to disclose American National Title's failure to except prior liens from coverage when issuing Southern Title insurance policies;

- Mohiuddin caused American National Title to use funds it received for improper purposes;

- Southern Title's total damages from Mohiuddin's wrongful conduct were $8,497,832.62; and

- Southern Title's damages of $8,497,832.62 should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) as a debt obtained by actual fraud, or $7,533,581.45 of that balance should be excepted from discharge 11 U.S.C. § 523(a)(4) as a debt for fraud while acting in a fiduciary capacity.

(ECF No. 25 at 61).

Based on the claims within its motion for summary judgment against Mohiuddin, Southern Title argues that it is entitled to recover post-judgment interest, calculated at the Treasury yield rate defined in 28 U.S.C. § 1961(a) and accruing daily from the date a judgment is entered until that judgment is satisfied. 28 U.S.C. § 1961(a), (b).

The Court took Southern Title's motion for summary judgment under advisement on March 1, 2017.

### Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(I). *See also In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009) (finding that a bankruptcy court had jurisdiction to enter judgment against a party for a debt owed and find that debt nondischargeable).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 into adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.

2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

When a party invokes a Fifth Amendment right in a civil proceeding in order to refuse to answer questions implicating him in criminal activity, that party's refusal to testify may be used against him in that proceeding.  *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983).  "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).  "In general, the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court."  *FDIC v. Fid. & Deposit Co.*, 45 F.3d 969, 977 (5th Cir. 1995).  However, "[t]he negative inference, if any, to be drawn from the assertion of the Fifth Amendment does not substitute" for the evidence required to obtain summary judgment.  *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991).  "Rather, a party seeking summary judgment must establish

independently the elements of [each] claim . . . ." *SEC v. Scherm*, 854 F. Supp. 900, 905 (N.D. Ga. 1993) (citing *Avirgan*, 932 F.2d at 1580).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a

genuine dispute of material fact.   FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.   The

non-moving party must cite to specific evidence demonstrating a genuine dispute.   FED. R. CIV.

P. 56(c)(1); *Celotex*, 477 U.S. at 324.   The non-moving party must also "articulate the manner in

which that evidence supports that party's claim."   *Duffie v. United States*, 600 F.3d 362, 371

(5th Cir. 2010).   Even if the movant meets its initial burden, the motion should be granted only if

the non-movant cannot demonstrate a genuine dispute of material fact.

    If the non-movant bears the burden of proof on an issue, the movant must show the

absence of sufficient evidence to support an essential element of the non-movant's claim.

*Celotex*, 477 U.S. at 325.   Upon an adequate showing of insufficient evidence, the non-movant

must respond with sufficient evidence to support the challenged element of its case.   *Id.* at 324.

The motion should be granted only if the non-movant cannot produce evidence to support an

essential element of its claim.   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197

(5th Cir. 2005).

### Analysis

    Three principal questions are at issue in this proceeding:

- Whether Mohiuddin is liable to Southern Title for fraud while serving as American National Title's treasurer when American National Title knowingly failed to except prior liens from coverage when issuing new title insurance policies to different entities on the lien-burdened properties, and for absconding with funds received by American National Title;

- Whether Mohiuddin's total alleged liability to Southern Title is nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt obtained by actual fraud, or whether only a portion of that balance is nondischargeable under 11 U.S.C. § 523(a)(4) as a debt for fraud while acting in a fiduciary capacity; and

- Whether Southern Title is entitled to recover post-judgment interest on any judgment entered in its favor.

(ECF No. 25 at 61).

*Fraud*

Under Texas law, to prevail on a claim of fraud by nondisclosure a plaintiff must establish that: "(1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (3) the defendant was deliberately silent when the defendant had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge." *White v. Zhou Pei*, 452 S.W.3d 527, 537 (Tex. App. 2014).

*(1) Failure to disclose material facts that Mohiuddin had a duty to disclose*

American National Title knowingly failed to disclose to Southern Title that it did not except or discharge certain valid and existing prior liens from coverage when it issued eight new Southern Title insurance policies.  (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 117–27, 169–72, 227–37, 279–82; ECF No. 25, Ex. 4 at Responses 117–27, 169–72, 227–37, 279–82 (invoking the Fifth Amendment)).[2]  The eight properties burdened by these insurance policies include: 16510 I-45 North, Houston, Texas; 7401 Wurzbach Road, San Antonio, Texas; 6 North Sam Houston Parkway, Houston, Texas; 17141 I-10 East, Channelview, Texas; 9112 North Broadway, Houston, Texas; 59 Wincrest Falls Drive, Cypress, Texas; 5623 Havenwoods, Houston, Texas; and 4401 Airline Drive, Houston, Texas.  (ECF No. 25 at 38–42).

As understood by the Court, the scheme undertaken by American National Title was simple.  At a typical closing, prior liens would be paid from proceeds available at the closing. Because the prior liens were expected to be paid out of the closing escrow, the prior liens would

---

[2] This and all other citations to Mohiuddin's assertion of his rights under the Fifth Amendment are cited only as negative inferences and not as substantive evidence of the claims the citations support.

not be listed as an exception to clear title.  The new lender would receive a title policy that would not mention the prior liens.  However, instead of paying the prior liens, American National Title and Mohiuddin would divert the funds designated for payment of the prior liens.  This scheme left Southern Title with substantial liability.  Because American National did not except prior liens from the Southern Title insurance policies, Southern Title was liable to the policy beneficiaries for the unscheduled prior liens.  Mohiuddin had the money; Southern Title had the liability to the policy beneficiaries.

As Treasurer of American National Title, Mohiuddin took part in the issuance of the eight insurance policies and personally managed the funds received by American National Title from those transactions.  (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)).  Because of Mohiuddin's direct personal involvement in these transactions, he was aware of American National Title's nondisclosure to Southern Title of its failure to repay prior existing liens before issuing the eight insurance policies to new entities.  He failed to disclose these facts to Southern Title.  (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)).

The fact that American National Title did not pay the prior existing liens was material to Southern Title.  A fact is material if "a reasonable person would attach importance to and would be induced to act on [the fact] in determining his choice of actions in the transaction in question." *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 478–79 (Tex. App. 2004).  A reasonable title insurance company like Southern Title would have attached importance to the fact that American National Title knowingly failed to disclose that it had not excepted certain

prior liens from coverage when it issued eight new insurance policies on the burdened properties. (ECF No. 25, Ex. 9).  If knowing of such an undisclosed fact, a reasonable title insurance company would have terminated its relationship with American National Title in order to prevent the issuance of the new policies.  (ECF No. 25, Ex. 9).  Accordingly, American National Title and Mohiuddin failed to disclose a material fact to Southern Title.

As an agent and fiduciary of Southern Title, Mohiuddin held a duty to disclose the material fact described above because it was a matter within the scope of his agency.  In general, a duty to disclose a material fact does not arise unless there is evidence of a fiduciary relationship between two parties.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  A failure to disclose a material fact does not constitute fraud unless there is a duty to disclose such information and the party required to disclose fails to do so.  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  "[A] fiduciary duty arises out of agency law based upon a special relationship between two parties."  *In re Bass*, 113 S.W.3d 735, 743 (Tex. 2003).  "An agent owes a fiduciary duty to its principal with respect to matters within the scope of its agency."  *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App. 2001).

An agency relationship is a consensual relationship between two parties where the agent acts for the principal within the principal's control.  *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008).  "To prove agency, evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task."  *Id.*

Southern Title and American National Title maintained an agency relationship in which Southern Title served as principal and American National Title as agent.  (ECF No. 25, Ex. 6). Southern Title held the right to assign American National Title the tasks of soliciting and issuing

Southern Title insurance policies, and to control the means by which American National Title accomplished those tasks.  (ECF No. 25, Ex. 6; ECF No. 25, Ex. 7 at Requests 5–8; ECF No. 25, Ex. 4 at Responses 5–8 (invoking the Fifth Amendment)).

In turn, an agency relationship existed between American National Title and Mohiuddin with American National Title serving as principal and Mohiuddin as agent.  (ECF No. 25, Ex. 7A at 3–4; ECF No. 25, Ex. 10 at 9, 13–15, 17; ECF No. 25, Ex. 6 at 6; ECF No. 25, Ex. 7 at Requests 1–4, 13–16, 1041, 1042; ECF No. 25, Ex. 4 at Responses 1–4, 13–16, 1041, 1042 (invoking the Fifth Amendment)).  American National Title held and exercised the right to assign the task of facilitating the solicitation and issuance of Southern Title insurance policies to Mohiuddin, as well as the right to control the means by which Mohiuddin accomplished those tasks; American National Title additionally held and exercised the right to appoint Mohiuddin to perform functions American National Title had consented to perform as an agent for Southern Title.  (ECF No. 25, Ex. 7A at 3–4; ECF No. 25, Ex. 10 at 9, 13–15, 17; ECF No. 25, Ex. 6 at 6; ECF No. 25, Ex. 7 at Requests 1–4, 13–16, 1041, 1042; ECF No. 25, Ex. 4 at Responses 1–4, 13–16, 1041, 1042 (invoking the Fifth Amendment)).  This agency relationship between American National Title and Mohiuddin thus made Mohiuddin a subagent of Southern Title.  *See* RESTATEMENT (THIRD) OF AGENCY § 3.15 (2006) ("A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal."); *see also Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 735 (Tex. App. 2001).  (ECF No. 25, Ex. 6 at 1).

Consequently, Mohiuddin was an agent of Southern Title and thus held a fiduciary duty with respect to matters within the scope of that agency.  The scope of Mohiuddin's agency relationship with Southern Title solely included the facilitating of the solicitation and issuance of

Southern Title Insurance policies by American National Title.  Because Mohiuddin's fiduciary duty to Southern Title covered the scope of this agency relationship, Mohiuddin's failure to disclose the material fact that American National Title did not pay prior existing liens before issuing Southern Title insurance policies to new entities on the lien-burdened properties both violated Mohiuddin's fiduciary duty to Southern Title and constituted fraud.

Accordingly, the record demonstrates Mohiuddin failed to disclose material facts that he had a fiduciary duty to disclose to Southern Title.

*(2) Mohiuddin knew Southern Title was ignorant of these material facts and did not have an equal opportunity to discover those facts*

Mohiuddin took a direct role in the issuance of the eight Southern Title insurance policies by American National Title, and personally managed the funds received by American National Title from those transactions, as American National Title's treasurer.  (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)).  From this vantage point, Mohiuddin knew that Southern Title was ignorant of the material fact that American National Title did not pay prior existing liens before issuing Southern Title insurance policies to new entities on the lien-burdened properties, and that Southern Title did not have an equal opportunity to discover such facts.  (ECF No. 25, Ex. 9)  (illustrating Southern Title's ignorance of American National Title's actions until after the issuance of the eight policies).

*(3) Mohiuddin was deliberately silent when he had a duty to speak*

"When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation."  *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).  A party's intent is a fact questioned

determined at the time his or her representation was made; that intent may be inferred from the party's acts completed after he or she made the representation. *Id.* at 434. "Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Id.* at 435. A failure to perform by itself is not sufficient to show fraud. *Id.*

As found above, Mohiuddin was an agent of Southern Title and thus held a fiduciary duty with respect to matters within the scope of that agency, including the duty to disclose the material fact that American National Title did not pay the prior existing liens before issuing Southern Title insurance policies to new entities on the lien-burdened properties.

Mohiuddin took direct part in the issuance of the eight Southern Title insurance policies by American National Title, and personally managed the funds received by American National Title from those transactions, as American National Title's treasurer. (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)). Based upon such circumstances, the Court finds that Mohiuddin was deliberately silent in order to conceal these material facts from Southern Title. (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7; ECF No. 25, Ex. 4 (invoking the Fifth Amendment)).

And, of course, there is motive. By not disclosing the exceptions on the title policies, Mohiuddin and America National Title were able to abscond with the funds.

*(4) By failing to disclose the facts, Mohiuddin intended to induce Southern Title to refrain from acting.*

The totality of the circumstances surrounding American National Title's issuance of the eight title insurance policies, as well as Mohiuddin's role in those transactions, establish that Mohiuddin intended to induce Southern Title to refrain from terminating its agency relationship

with American National Title through his failure to disclose material facts.  Mohiuddin's failure to disclose American National Title's knowing nondisclosure regarding how it had not paid prior liens when it issued the eight new insurance policies, as well as his use of the funds from those transactions for his own benefit, illustrates his intention to induce Southern Title to refrain from terminating its relationship with American National Title and preventing the issuance of the eight title insurance policies.  (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7; ECF No. 25, Ex. 4 (invoking the Fifth Amendment)).

If Mohiuddin had disclosed such information to Southern Title, a reasonable title insurance company like Southern Title would have terminated its relationship with American National Title in order to prevent the issuance of the new policies.  (ECF No. 25, Ex. 9). Accordingly, the totality of the circumstances leads the Court to conclude that Mohiuddin intended to induce Southern Title by failing to disclose American National Title's wrongdoings in order to prevent Southern Title from terminating its agency relationships with American National Title and Mohiuddin.

*(5) Southern Title relied on Mohiuddin's nondisclosure*

Reliance is an element of fraud under Texas law that a plaintiff must establish in order to prevail on its fraud claim.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).  A plaintiff's reliance must be justifiable.  *Spethmann v. Anderson*, 171 S.W.3d 680, 689 (Tex. App. 2005) (holding a plaintiff shareholder justifiably relied on misrepresentations about valuation).  "The existence of a confidential or fiduciary relationship between the person making a representation and the person to whom the representation is made may justify reliance on the representation, even though such reliance would not be justified if the transaction

occurred at arm's length."  41 Tex. Jur. 3d Fraud and Deceit § 33 (citing *Clark & Boice Lumber Co. v. Barker*, 193 S.W. 371 (Tex. Civ. App. Texarkana 1917)).

Southern Title relied on American National Title's representation that it would issue title insurance policies in accordance with standard title insurance underwriting practices.  (ECF No. 25, Ex. 9).  For that reason, Southern Title relied on Mohiuddin's nondisclosure that American National Title had not paid prior liens when it issued the eight new insurance policies, as American National Title's actions were not in accordance with recognized title insurance underwriting practices.  (ECF No. 25, Ex. 9).

Furthermore, Southern Title's reliance on Mohiuddin's nondisclosure was justifiable. Amongst an agent's fiduciary duties to its principal "is the duty to account for profits arising out of the employment, the duty not to act as, or on account of, an adverse party without the principal's consent, the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them."  *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (citing Restatement (Second) of Agency § 13, cmt. a (1958)).  As found above, Southern Title shared agency relationships with American National Title and Mohiuddin.  Based upon these agency relationships, American National Title and Mohiuddin owed Southern Title these fiduciary duties.  Consequently, Southern Title's reliance on American National Title's representations and Mohiuddin's nondisclosure was justifiable.

*(6) Southern Title was injured as a result of acting without knowledge*

"Ordinarily, the measure of damages in a fraud case is the actual amount of the plaintiff's loss that directly and proximately results from the defendant's fraudulent conduct."  *Tilton v. Marshall*, 925 S.W.2d 672, 680 (Tex. 1996).  Proximate cause requires both cause in fact and

foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995). Cause in fact requires that the defendant's act or omission be "a substantial factor in bringing about the injury which would not have otherwise occurred." *Id.* "Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985).

Southern Title incurred $8,497,832.62 in liabilities, fees, and expenses from American National Title's issuance of the eight Southern Title insurance policies. (ECF No. 25, Ex. 96). This injury was a direct result of American National Title and Mohiuddin's fraudulent conduct. (ECF No. 25, Ex. 9) (stating that a reasonable title insurance company would have terminated its relationship with American National Title and prevented the issuance of the eight insurance policies had it known of American National Title's failure to follow recognized title insurance underwriting practices).

Southern Title's incurrence of its liability was also a reasonably foreseeable consequence of acting without knowledge of the material facts American National Title and Mohiuddin failed to disclose to it because liability under an insurance policy is a foreseeable consequence of the issuance of a first-lien policy without payment of the prior liens. (ECF No. 25, Ex. 9). Accordingly, Southern Title was injured as a result of acting without knowledge of material facts that American National Title and Mohiuddin failed to disclose to Southern Title.

Based on the uncontroverted evidence supporting each element of Southern Title's fraud claim and Mohiuddin's failure to establish a genuine issue as to any material fact of Southern Title's claim, the Court grants Southern Title's motion for summary judgment on its fraud claim.

**Nondischargeability Under Section 523(a)(2)(A)**

Under 11 U.S.C. § 523(a)(2)(A), a "discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by-- (A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The nondischargeability of a claim must be proved by a preponderance of the evidence. *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001). Previously, for a debt to be nondischargeable under Section 523(a)(2)(A), a creditor needed to show that: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *Id.* However, pursuant to the U.S. Supreme Court's recent opinion in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016), "actual fraud" under Section 523(a)(2)(A) may occur without a false representation.

*(1) Mohiuddin made a representation*

Although actual fraud may be accomplished without a false representation, the Court nevertheless finds that Mohiuddin made false representations to Southern Title. Alternatively, if the Court is incorrect that false representations occurred, the facts amply demonstrate that actual fraud was undertaken by Mohiuddin.

When a party has a duty to speak, silence regarding a material fact may constitute a fraudulent misrepresentation. *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996); RESTATEMENT (SECOND) OF TORTS, §§ 550, 551. As stated above, Mohiuddin was an agent of Southern Title under Texas law and thus held a fiduciary duty to Southern Title with respect to matters within the scope of his agency, which included the facilitating of the

solicitation and issuance of Southern Title Insurance policies by American National Title. Mohiuddin subsequently failed to disclose to Southern Title that American National Title had not paid prior liens when it issued the eight new insurance policies. Consequently, Mohiuddin's silence on these material facts constituted a fraudulent misrepresentation.

*(2) Mohiuddin knew the representation was false*

Although the Court need not find that Mohiuddin knew that he made a false representation in order for his liability to Southern Title to be nondischargeable under Section 523(a)(2)(A), the Court determines that Mohiuddin knowingly made a false representation to Southern Title.

As Treasurer of American National Title, Mohiuddin took part in the issuance of the eight title insurance policies and personally managed the funds received by American National Title from those transactions. (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)). Because of Mohiuddin's direct personal involvement in these transactions, he was aware of American National Title's nondisclosure to Southern Title described above and failed to disclose these facts to Southern Title. (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7 at Requests 107, 128–67, 173–78, 218, 238–77, 283–88; ECF No. 25, Ex. 4 at Responses 107, 128–67, 173–78, 218, 238–77, 283–88 (invoking the Fifth Amendment)). Mohiuddin later failed to disclose to Southern Title that American National Title did not pay prior existing liens before issuing the eight insurance policies to new entities on the lien-burdened properties. Accordingly, Mohiuddin's nondisclosure constituted a representation that American National Title followed standard title insurance underwriting practices when it

issued the eight new title insurance policies, which he knew to be false from his personal involvement in the transactions.

*(3) Mohiuddin's representation was made with the intent to deceive Southern Title*

The intent to deceive is present where a debtor "intends or has reason to expect [the creditor] to act or to refrain from action in reliance upon the misrepresentation." RESTATEMENT (SECOND) OF TORTS § 531 (1977). "A result is intended if the actor either acts with the desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct." RESTATEMENT (SECOND) OF TORTS § 531, cmt. c. A creditor is justified in relying on a debtor's representation only if there is reason to believe that the debtor's intentions are legitimate and expects those intentions to be carried out. RESTATEMENT (SECOND) OF TORTS § 544, cmt. a. "Whether the recipient has reason for this belief depends upon the circumstances under which the statement was made, including the fact that it was made for the purpose of inducing the recipient to act in reliance upon it . . . ." *Id.*

As found in the record, Mohiuddin's failure to disclose American National Title's knowing nondisclosure that it had not paid prior liens when it issued the eight insurance policies despite his role in those transactions, as well as his use of funds from those transactions for his own benefit, illustrates his intention to induce Southern Title to refrain from terminating its relationship with American National Title. (ECF No. 25, Ex. 9; ECF No. 25, Ex. 7; ECF No. 25, Ex. 4 (invoking the Fifth Amendment)). If Mohiuddin had disclosed such information to Southern Title, Mohiuddin would have deprived himself and American National Title of the ability to steal additional funds because a reasonable title insurance company like Southern Title would have terminated its relationship with American National Title under such circumstances. (ECF No. 25, Ex. 9). Consequently, the totality of the circumstances establishes that Mohiuddin

intended to induce Southern Title to refrain from terminating its agency relationship with American National Title in order to secure American National Title's legal and illegal stream of income from the issuance of Southern Title insurance policies.

*(4) Southern Title actually and justifiably relied on the representation*

Despite the fact that Southern Title need not have actually and justifiably relied on a false representation by Mohiuddin for his liability to be nondischargeable, the Court finds that Southern Title did actually and justifiably rely on Mohiuddin's fraudulent representation.

"Actual Reliance" only requires a creditor to prove that it "in fact relied upon the representations of the debtor." *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 284 (11th Cir. 1995). A creditor's actual reliance upon a debtor's representation is not required to be the "but-for" cause of the creditor's actions-it is enough that the reliance played a substantial part in the creditor's decision. RESTATEMENT (SECOND) OF TORTS § 546, cmt. b. Justifiable reliance imposes no duty to investigate upon a creditor unless the false nature of a representation becomes readily apparent so as to make that reliance unjustifiable. *In re Hurst*, 337 B.R. 125, 133–34 (Bankr. N.D. Tex. 2005).

It is clear from the record that Southern Title actually relied on American National Title's representations and Mohiuddin's failure to disclose because a reasonable title insurance company like Southern Title would have attached importance to the fact that American National Title knowingly failed to disclose that it had not excepted from coverage or paid certain prior liens when it issued eight new insurance policies on the burdened properties. (ECF No. 25, Ex. 9). Additionally, Southern Title's agency relationships with American National Title and Mohiuddin, under which American National Title and Mohiuddin owed fiduciary duties, made

Southern Title's reliance on American National Title's representations and Mohiuddin's nondisclosure justifiable.

*(5) Southern Title sustained a loss as a proximate result of its reliance*

In order to establish a defendant's liability for a plaintiff's injuries, the plaintiff must establish proximate cause.  *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997).  Reliance is a proximate cause of a plaintiff's loss if the evidence shows that the loss was a reasonably foreseeable consequence of the plaintiff's reliance.  *Id.*

The evidence in the record establishes that Southern Title incurred a total of $8,497,832.62 in liabilities, fees, and expenses from American National Title's issuance of the eight Southern Title insurance policies.  (ECF No. 25, Ex. 96).  Southern Title's incurrence of this liability was a reasonably foreseeable consequence of acting without knowledge of the material facts American National Title and Mohiuddin failed to disclose because liability under an insurance policy is a foreseeable consequence of the issuance of a first-lien policy without payment of prior liens.  (ECF No. 25, Ex. 96).  Additionally, the reasonably foreseeable consequence of issuing first-lien policies to two competing lienholders invokes liability under those policies.  (ECF No. 25, Ex. 96).  Southern Title thus sustained a loss as a proximate result of its reliance on American National Title's and Mohiuddin's representations.

Based on the uncontroverted evidence supporting Southern Title's claim for nondischargeability of Mohiuddin's total liability, and Mohiuddin's failure to establish a genuine issue as any material fact of Southern Title's claim, the Court grants Southern Title's motion for summary judgment on its Section 523(a)(2)(A) claim.

***Nondischargeability Under Section 523(a)(4)***

Because the Court finds Mohiuddin's total liability to Southern Title nondischargeable under Section 523(a)(2)(A), the Court need not make a determination of nondischargebility as to the $7,533,581.45 portion of Mohiuddin's liability to Southern Title.

***Post-Judgment Interest***

Within the Fifth Circuit, post-judgment interest is governed by 28 U.S.C. § 1961(a). *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993). Section 1961(a) governs the rate of postjudgment interest on a federal court judgment even if the underlying action is governed by state law. *See Loft v. Lapidus*, 936 F.2d 633, 639 (1st Cir. 1991); *see also Liljeberg*, 7 F.3d at 1209 (applying Section 1961(a) to a proceeding governed by Louisiana state law). According to Section 1961(a), "[i]nterest shall be allowed on any money judgment in a civil action recovered in a district court." 28 U.S.C. § 1961(a). The interest is calculated from the judgment date "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" the judgment date. 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment . . . ." 28 U.S.C. § 1961(b).

A proceeding in bankruptcy court qualifies as a "civil action" within the confines of Section 1961. *See In re Keefe*, 401 B.R. 520, 526 (B.A.P. 1st Cir. 2009); *Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992) (citing *In re A.S.M., Inc.*, 110 B.R. 802, 806 (Bankr. W.D. Tex. 1990)); *In re Missionary Baptist Found. of Am., Inc.*, 69 B.R. 536, 539 (Bankr. N.D. Tex. 1987). Consequently, a prevailing party in bankruptcy court is entitled to post-judgment interest under Section 1961.

Because of the uncontroverted evidence supporting Southern Title's claims for fraud and nondischargeability of Mohiuddin's liability under Section 523(a)(2)(A), the Court finds no genuine dispute as to any material fact that Southern Title is entitled to recover post-judgment interest at the federal rate.  Such interest will accrue daily from the date of entry of this judgment until the judgment is satisfied.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **May 12, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE